UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ANGELA MARTINEZ                                              CIVIL ACTION

v.                                                           NO. 20-3101

GREATER NEW ORLEANS EXPRESSWAY                               SECTION "F"
COMMISSION, ET AL.

ORDER AND REASONS

Before the Court is the defendants' Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion is GRANTED.

**Background**

Traveling home from a Jonas Brothers concert in the wee hours of November 13, 2019, the plaintiff Angela Martinez drove northbound on the Lake Pontchartrain Causeway. Near the end of Martinez's trek across the world's longest bridge, defendant Christian Coyle – an officer in the Causeway Police Department, which itself is an arm of the Greater New Orleans Expressway Commission (GNOEC) – saw Martinez strike the lane divider (or center line) and stopped Martinez for suspected drunk driving. While speaking to Martinez, Coyle detected "a moderate odor" of alcohol on Martinez's breath.[1] Martinez told Coyle that she had

---

[1] This fact is drawn not from Martinez's pleadings, but from Officer Coyle's contemporaneous arrest report, which Martinez attached as an exhibit to her response to the defendants' motion.

1

not been drinking, but later admitted to having "only one" adult beverage.  When Martinez failed to complete a standardized field sobriety test to Coyle's satisfaction, Coyle arrested Martinez for driving while intoxicated and transported Martinez to a Louisiana State Police station several miles away.

At the station, Martinez passed two Breathalyzer tests with flying colors.  In both tests, Martinez produced a BAC reading of .007% - less than 10% of Louisiana's "legal limit" of .08%.  Martinez also denied being under the influence of prescription or over-the-counter drugs.  Still doubting Martinez's sobriety, Coyle

---

See Opp'n, Ex. B.  The Court's consideration of this document is fair and proper.  Indeed, while courts must ordinarily hew to a plaintiff's version of events in considering a Rule 12(b)(6) motion to dismiss (namely, by viewing all well-pleaded facts in the light most favorable to the plaintiff and drawing all reasonable inferences in the plaintiff's favor), a court need not turn a blind eye to harmful facts in materials that the *plaintiff herself* has attached to her own papers.  Although the plaintiff is surely the master of her complaint, she may not cherry-pick helpful aspects of a document "and at the same time prevent the court from considering [the document's] actual terms."  See Winshall v. Viacom Int'l, Inc., 76 A.3d 808, 818 (Del. 2013); see also Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004).  To combat such gamesmanship, a document cited by a plaintiff is appropriately incorporated by reference into their complaint.

Such is the case with Officer Coyle's arrest report here.  Martinez's decision to inject that report into this case by attaching it to her opposition to the motion at hand means that the report can appropriately be used against her in this context.  This is especially important in this case, where Martinez's ability to state a plausible claim for relief hinges almost entirely on the factual reasonableness of Officer Coyle's actions.

transported Martinez to the St. Tammany Parish Jail and booked Martinez for Operating While Intoxicated and Careless Operation.

One year later, on November 13, 2020, Martinez sued Coyle, Coyle's supervisor Commander Conrad Franz, the GNOEC, and the Causeway Police Department in this Court. In a three-count complaint,[2] Martinez seeks damages, fees, and costs under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 for alleged violations – and failures to train against or correct violations – of her Fourth, Eighth, and Fourteenth Amendment rights. In essence, Martinez claims that Coyle maliciously detained, booked, charged, and testified against her without cause, and that Franz and the GNOEC aided and abetted Coyle's unlawful vendetta against Martinez through failures to train, supervise, and correct Coyle.

On January 11, 2021, the defendants moved to dismiss Martinez's complaint under Federal Rule of Civil Procedure 12(b)(6).

I.

Rule 12(b)(6) allows a party to move for dismissal of a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

---

[2] Martinez's complaint appears to inadvertently jump straight to "Count Two." The Court can only assume that this was the result of a typographical error, and thus construes Paragraph 29 – which, indeed, is the complaint's focal point – as "Count One" of three.

3

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To demonstrate a facially plausible basis for relief, a plaintiff must plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining whether a plaintiff has met this burden, a court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff," but must not accord an assumption of truth to conclusory allegations and threadbare assertions. Thompson v. City of Waco, 764 F.3d 500, 502 (5th Cir. 2014).

The foregoing presumptions are not to be applied mindlessly, however. Thus, in considering a motion to dismiss, the Court may review any documents attached to or incorporated into the plaintiff's complaint by reference. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004). In addition, the Court may judicially notice matters of public record and other facts not subject to reasonable dispute. See United States *ex rel.* Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003).

## II.

The Court thus considers whether any count in Martinez's complaint states a plausible claim for relief.

4

**A.  Count One: § 1983 Claim Against Officer Coyle**

The fulcrum of this case is Martinez's civil-rights claim against Coyle. In essence, Martinez asserts that Coyle decided to haul her to jail, charge her, and testify against her in spite of the fact that Martinez's post-arrest Breathalyzer tests gave him a total lack of cause for doing so. Martinez contends that these actions amounted to false arrest, detention, charges, booking, and imprisonment in violation of her "(i) Fourth Amendment right to be free from unreasonable seizure, (ii) Eighth Amendment right to be free from cruel and unusual punishment, and (iii) Fourteenth Amendment right[s] of liberty, due process of law, and equal protection – all in violation of 42 U.S.C. § 1983." See Compl., ¶ 29.

Coyle seeks dismissal of this § 1983 claim on the basis of qualified immunity.

1.  Legal Standard: Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." See Pearson v. Callahan, 555 U.S. 223, 231 (2009); see also id. ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

5

constitutional rights of which a reasonable person would have known.'" (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982))). Qualified immunity thus "operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)).

The Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims." Pearson, 555 U.S. at 232.

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of [the] defendant's alleged misconduct.

Id. (citations omitted).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, *overruled in part on other grounds by* Pearson, 555 U.S. at 236. "Clearly established" law is settled law that "place[s] the constitutionality of the officer's conduct 'beyond debate.'" District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). "This demanding standard" requires "precedent [so] clear . . . that *every*

6

reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Id. at 589–90 (emphasis added). The strictness of this inquiry ensures that officials have "breathing room to make reasonable but mistaken judgments about open legal questions." al-Kidd, 563 U.S. at 743.

When a defendant invokes the defense of qualified immunity, the plaintiff bears the burden of negating it. See Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009). And when a defendant does so at the pleadings stage, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012) (quoting Wicks v. Miss. State Emp. Servs., 41 F.3d 991, 994 (5th Cir. 1995)).

As explained below, Martinez fails to do so here.

2.   Analysis: Coyle's Entitlement to Qualified Immunity

Martinez's ability to prevail on prong one of the qualified immunity analysis turns on her complaint's ability to "make out a violation of a constitutional right." See Pearson, 555 U.S. at 232. Martinez's complaint and response shed no light on her theory as to how Coyle's actions in this case violated her Eighth and Fourteenth Amendment rights, so - finding this notion fanciful and wholly unsupported - the Court agrees with the defendants that Count One of Martinez's complaint is best construed as a classic Fourth Amendment claim of false arrest/false imprisonment. In

7

this regard, Martinez alleges that Coyle "unjustifiably" arrested, detained, charged, and imprisoned her for Operating While Intoxicated and Careless Operation when he knew – or should have known – that she "was presumptively not under the influence of alcoholic beverages pursuant to La. [R.S.] 32:662." See Compl., ¶ 29.

To prevail on this claim, Martinez must show that the Coyle did not have probable cause to arrest her and proceed as he allegedly did. See Haggerty v. Tex. S. Univ., 391 F.3d 653, 655 (5th Cir. 2004). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing the offense.'" Id. at 655-56 (quoting Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001)).

Applying that rule to this case, Coyle "is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [Coyle] was aware, there was a fair probability that [Martinez] had committed" the offenses of Operating While Intoxicated and/or Careless Operation. See id. at 656. This "is not a high bar," for it merely requires that Coyle have acted as a "reasonable and prudent" person, not as a "legal technician[]." See Kaley v. United States, 571 U.S. 320, 338

8

(2014) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983) (internal quotation marks omitted)). In countless similar cases, federal courts have observed that a police officer need neither "be perfect" nor "always . . . err on the side of caution out of the fear of being sued." See Martin v. Thomas, 973 F.2d 449, 453 (5th Cir. 1992).

Under this forgiving standard, Martinez's *own* allegations – and the evidence *she* injected into this phase of the proceedings, see *supra* note 1 – plainly show that Coyle did indeed have probable cause for arresting and proceeding against Martinez. Consider Coyle's arrest report. See Opp'n, Ex. B. In it, Coyle attests to a bevy of facts that could lead a *reasonable* (not a perfect, or an overly hesitant)[3] officer to deduce from the totality of the circumstances "a fair *probability*" that Martinez had been driving under the influence and/or carelessly in the moments before her arrest. Cf. Haggerty, 391 F.3d at 656 (emphasis added). Indeed, as Coyle's report states: It was late at night; Martinez appeared to have difficulty staying in her lane (striking the lane line); Martinez was driving home from a concert, smelled of alcohol, had blood shot and glassy eyes, and even admitted to drinking (but only after changing her initial story); and, Martinez failed a standardized field sobriety test.

---

[3]   See Martin, 973 F.2d at 453.

9

Against all these grounds for reasonably suspecting drunk and/or careless driving – including the possibility that Martinez could have sobered up (or, more charitably, benefited from the dissipation in blood-alcohol content that naturally accompanies a break in drinking and, perhaps, the adrenaline rush of a field sobriety test and subsequent arrest) in the time between her suspicious driving and her successful Breathalyzer tests at the station – Martinez responds with a single argument: namely, that her low BAC result at the station gave Coyle *better* (if not conclusive) reason to find that Martinez had *not* been driving under the influence at the moment of arrest.  Going further, Martinez argues that, "in fact," she "was presumptively *not* intoxicated" as a matter of Louisiana law.

This argument, which is the linchpin of Martinez's entire case, misses the mark in two important ways.  First, it entirely discounts key temporal aspects of relevant caselaw and the events of the night at issue.  Indeed, as noted above, Coyle had good, common-sense reason for believing that the BAC result Martinez produced at the station would almost certainly be lower than the BAC result she would have produced at the moment he witnessed her shaky driving on the Causeway.  For this reason and others, the applicable legal inquiry pertains to Coyle's "knowledge *at the moment of arrest*," not to Coyle's knowledge some minutes or hours

later while back at the station.  See Haggerty, 391 F.3d at 655-66 (emphasis added).

Second, Martinez's reliance on Louisiana Revised Statute 32:662 is clearly misplaced.  By its plain language, that statute imposes certain evidentiary presumptions "[u]pon *the trial* of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving . . . a vehicle while under the influence of alcoholic beverages."  See La. R.S. 36:662(A)(1) (emphasis added).  Nowhere does the statute refer to "arrests," "bookings," "detentions," or "charging" decisions.

What the statute *does* say confirms the flawed manner in which Martinez seeks to deploy the statute here.  For starters, the statute clearly states that, with one inapplicable exception, the statute "has no application to a civil action or proceeding." La. R.S. 36:662(C).  Moreover, the text further provides that the evidentiary presumptions wielded by Martinez "shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether the [driver] was under the influence of alcoholic beverages" or other intoxicating substances – such as all the other evidence provided in Coyle's arrest report.  La. R.S. 36:662(B).

The legislature's inclusion of this language further undermines Martinez's argument that her good Breathalyzer tests alone should have put a reasonable officer in Coyle's position on

11

notice that Martinez was decidedly "not intoxicated" when Coyle arrested and proceeded against her.  Indeed, if "other competent evidence" is good enough for trial, it is also good enough for the snap determinations an officer like Coyle must make in arresting and processing a suspected drunk driver in the dead of night and in the heat of the moment.

Considering all the foregoing, the Court finds that Coyle did indeed have probable cause for arresting and proceeding against Martinez.  As a result, Coyle is entitled to qualified immunity, and Martinez's § 1983 claim against him must accordingly be dismissed for failure to state a claim upon which relief can be granted.  See, e.g., Haggerty, 391 F.3d at 655–56.

### B. Count Two:  Respondeat Superior Claim Against Commander Franz and the GNOEC[4] Under La. Civ. Code art. 2320

The Court next considers the second count of Martinez's complaint.  There, Martinez claims that Commander Franz "and/or" the GNOEC "are vicariously liable [for Coyle's tortious actions] under a theory of *respondeat superior* pursuant to La. Civ. Code

---

[4]  Martinez also names the Causeway Police Department as a defendant to this count.  The defendants counter that the Department is not a juridical entity, however, and Martinez agrees. See Opp'n at 12 ("Plaintiff does not oppose striking the Causeway Police Department as a named defendant if and only in the event plaintiff is entitled to maintain her causes of action[] and claims for relief against the GNOEC and can refer to the Causeway Police Department as essentially a dba of the GNOEC.").  Accordingly, the Court construes the GNOEC and the Causeway Police Department as coextensive bodies for purposes of this opinion and its analysis.

art. 2320 for the actions and/or inactions" of Coyle "within the course and scope of his employment" with the Causeway Police Department. See Compl., ¶ 31; see also La. Civ. Code art. 2320 (making "[m]asters and employers . . . answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed").

1. Commander Franz

Martinez fails to state a plausible respondeat superior claim against Commander Franz because her allegations against Franz are textbook examples of "conclusory" allegations that call for 12(b)(6) dismissal. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. With essentially no direct or concrete allegations to speak of, Martinez appears to assert that Franz '*must have*' been guilty of insufficient training, supervision, and screening because Coyle – who reports to Franz - did what he did to Martinez. Theoretical and unsubstantiated allegations of this type clearly fail to state plausible claims for relief.

2. The GNOEC

For similar reasons, Martinez's respondeat superior claim against the GNOEC fails as well. In addition to the same fatal dearth of specificity described above, Martinez's complaint also contains no allegations of widespread patterns of abuse in the Commission and no allegations of the Commission's direct or concrete involvement in the abuses Martinez allegedly suffered -

13

which, as explained, are not constitutional torts in the first place.

* * *

These pervasive pleading defects necessitate dismissal of Count Two for failure to state a claim upon which relief can be granted.

### C. Count Three:  Improper Hiring/Training/Supervision and Conspiracy Claims Against Commander Franz and the GNOEC Under §§ 1985 and 1986

That leaves the third and final count of Martinez's complaint. In that count, Martinez claims that the supervising defendants (namely, Commander Franz, the GNOEC, and the Causeway Police Department) "are independently liable for negligently and/or intentionally" violating Martinez's rights by (1) "failing to implement an adequate employment screening program to ensure prospective employees . . . are free of undue bias, prejudice, and/or motivation to serve as law enforcement officers", (2) "failing to properly train their law enforcement officers, including Officer Coyle, in the interpretation and application" of state and constitutional law, and (3) "failing to properly supervise and/or implement proper oversight and review of the actions" of officers like (and including) Coyle. See Compl., ¶¶ 32–33.

This grab bag of conclusory allegations must be dismissed as well. Like Martinez's respondeat superior claims, this claim is

heavy on rhetoric but fatally light on detail and specificity. Again, Martinez appears to assume that there '*must have*' been systemic failures to screen, train, and supervise if Coyle could have acted in such a fashion vis-à-vis Martinez. This imprecise form of "begs-the-question" pleading is plainly insufficient under modern pleading standards, which require pleadings to demonstrate an affirmative *plausibility* that the defendants are indeed liable for the misconduct alleged rather than a mere *conceivability* that the facts complained of may ultimately be borne out at trial. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. Without a doubt, Martinez may not parlay an unavailing civil-rights claim against a single officer into an indiscriminate fishing expedition into the practices of higher-ups and an entire municipal body.[5]

\* \* \*

"[T]he 'driving force' behind [the Supreme Court's] creation of the qualified immunity doctrine was a desire to ensure that '"insubstantial claims" against government officials [will] be resolved prior to discovery.'" Pearson, 555 U.S. at 231 (last alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)).

---

[5] Martinez's loosely framed claims under 42 U.S.C. §§ 1985, 1986, and 1988 are frivolous for all the same reasons. As a result, the Court dismisses such claims out of hand.

15

In this case, the plaintiff Angela Martinez makes precisely such a claim.  At bottom, she alleges that the refusal of defendant-police officer Christian Coyle to release her from custody after she passed two post-arrest Breathalyzer tests was motivated by some loosely alleged animus rather than probable cause.  As detailed above, this notion is fatally flawed because it ignores abundant countervailing evidence – contained in an arrest report that Martinez herself chose to enter into the record at this preliminary stage of the proceedings[6] – which could easily lead a reasonable officer in Coyle's position to join Coyle in perceiving a reasonable likelihood that Martinez had indeed committed the offenses of driving while intoxicated and/or careless operation on the night in question.  As a result, the actions Coyle took against Martinez were backed by probable cause.  Probable cause is all the Constitution requires of officers in Coyle's position - for better or worse, "[t]he Constitution does not guarantee that only the guilty will be arrested." See Smith v. Gonzales, 670 F.2d 522, 526 (5th Cir. 1982).

Martinez's related claims against Coyle's supervisor and employer likewise fail to state plausible claims for relief.  For all their ambition, they bear an utter lack of specificity.

---

[6] See footnote 1 for an explanation of the Court's basis for considering this extraneous evidence at the motion to dismiss stage.

Accordingly, IT IS ORDERED: that the defendants' motion to dismiss is GRANTED.  The plaintiff's claims are DISMISSED WITH PREJUDICE.[7]

New Orleans, Louisiana, March 17, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[7] Dismissal with prejudice is called for because Martinez is represented by counsel, because she did not request leave to amend in the alternative to dismissal, and because "it is clear that the defects [in Martinez's complaint] are incurable." See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 349 (5th Cir. 2002).